IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TEXTRON FINANCIAL CORPORATION,

       Plaintiff,

v.                                 Civil Action No. 1:10CV39
                                        (STAMP)

NEW HORIZON HOME SALES, INC.,
a West Virginia corporation,
GILMER HOUSING PARTNERS, LLC,
a West Virginia limited liability company,
and SUMMIT COMMUNITY BANK,
a West Virginia corporation,

       Defendants,

and

SUMMIT COMMUNITY BANK,
a West Virginia corporation,

       Third-Party Plaintiff,

v.

JACK D. JONES and
OFFICE OF THE CLERK OF THE COUNTY COMMISSION
OF GILMER COUNTY, WEST VIRGINIA,

       Third-Party Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING AS FRAMED PLAINTIFF TEXTRON FINANCIAL
CORPORATION'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THIRD-PARTY DEFENDANT OFFICE OF THE CLERK
OF THE COUNTY COMMISSION OF GILMER COUNTY, WEST VIRGINIA'S
MOTION TO DISMISS**

I.  Procedural History

The plaintiff in the above-styled civil action, Textron

Financial Corporation ("TFC"), filed a complaint in this Court

against defendant New Horizon Home Sales, Inc. ("New Horizon"),

Gilmer Housing Partners, LLC ("GHP"), and Summit Community Bank ("Summit").  This civil action involves three separate modular homes.  TFC seeks a declaratory judgment that it holds the priority interest in the modular home bearing the serial number 355372 ("Encumbered Unit"), which secures three separate security interests held by TFC, GHP, and Summit.  TFC further contends that it should be permitted to enter and possess this modular home because of the alleged default of New Horizon.  TFC also brings suit against New Horizon for allegedly selling modular homes bearing the serial numbers 722395 ("Out of Trust Unit A") and 009007 ("Out of Trust Unit B") out of trust.  TFC seeks the amount owed by New Horizon for these out of trust units.

Summit then filed a crossclaim against New Horizon and a third-party complaint against Jack D. Jones, the president of New Horizon, for failure to inform Summit of TFC's fixture filing when New Horizon applied for the loan and when New Horizon executed the Note, the Renewal Note and other loan documents,[1] and The Office of the Clerk of the County Commission of Gilmer County, West Virginia ("Gilmer County") for willfully and negligently breaching its statutory duty by failing to file the fixture filing under New Horizon's name.

---

[1] On March 10, 2011, this Court dismissed Jones pursuant to a stipulation and order of voluntary dismissal submitted by Summit and Jones.

TFC filed a motion for summary judgment. TFC argues it is entitled to summary judgment on its declaratory judgment claim because it has the superior perfected security interest in the Encumbered Unit and because the credit documents it entered into with New Horizon contain express provisions regarding default and possession of collateral. TFC believes that it has a priority lien on the encumbered unit as between it and Summit because of the first to file rule. It also argues that it has a Purchase Money Security Interest ("PMSI") in the Encumbered Unit and therefore has priority over GHP's previously recorded deed of trust. TFC thus argues that it is entitled to possession. TFC also argues that it is entitled to an entry of judgment against New Horizon because New Horizon has defaulted and failed to abide by the credit documents. It also argues that it is entitled to an award of attorney's fees from New Horizon.

Summit filed a response to TFC's motion for summary judgment. It believes that TFC's motion should be denied on equitable grounds because TFC's acts and omissions contributed to the damages sought in this matter. It argues that TFC's actions contributed to the filing error by listing Jones as the initial debtor. It also states that the general rule in West Virginia is that a party without actual notice may rely upon record titles in the office of the clerk of the county commission of the county in which the land is located and that where a party has reasonable grounds to believe

that property may have been conveyed in an instrument not of record, that party is obliged to use reasonable diligence to determine whether such previous conveyance exists and thus West Virginia Code § 40-1-9 should apply to the present matter.

TFC filed a reply. TFC argues that it did file correctly and that Article 9 of the Uniform Commercial Code ("UCC"), not West Virginia Code § 40-1-9, applies.

Gilmer County filed a motion to dismiss, arguing that no action may be maintained against a government agency for breach of a general duty owed to the public as a whole. It contends that, even assuming a duty existed, it was a duty owed to the public regarding the indexing of writings. Finally, it argues that it is immune from suit pursuant to the Governmental Tort Claims and Insurance Act.

Summit responded arguing that the statute expressly permits liability for loss caused by the negligent performance of a political subdivision's employees while acting within the scope of their employment. Summit contends that the issue of whether a special duty arises under the Act is a question of fact and that the motion to dismiss fails to set forth any factual basis for its argument that the public duty doctrine applies to this matter or to support its position that a special relationship does not exist. Finally, Summit believes that a private cause of action may exist against a county commission based on a filing error.

These motions are now fully briefed and ripe for review.  For the reasons set forth below, this Court grants TFC's motion for summary judgment as framed and denies Gilmer County's motion to dismiss.

## II.  <u>Facts</u>

On September 26, 2005, TFC entered into an agreement ("2005 Agreement") with New Horizon to finance New Horizon's acquisition of inventory for sale by New Horizon in its ordinary course of business.  New Horizon granted TFC a security interest in all equipment and inventory, now or hereafter acquired, all present and future discounts, etc., all instruments, accounts, contract rights, and chattel paper, and proceeds.  TFC perfected its security interest by filing a UCC-1 financing statement with the West Virginia Secretary of State.

On March 7, 2007, TFC and New Horizon entered into a credit and security agreement ("2007 Agreement").  The credit documents provided that all collateral shall at all times be located at New Horizon's place of business and that the collateral is to remain personal property and is not to become affixed to or form a part of any real estate and to keep the collateral free from all liens and encumbrances.  The credit documents further required New Horizon to hold the proceeds from the sale of collateral in trust for TFC and to remit to TFC the total unpaid invoice cost of each modular home unit sold from its inventory upon receipt of sale proceeds.  The

documents permit TFC to enter the property to repossess, take possession of, and remove collateral in the event that New Horizon defaults on its obligations.

On July 2, 2008, New Horizon acquired title to two lots in Gilmer County by deed from GHP. On August 8, 2008, GHP filed a deed of trust to secure a $30,000.00 promissory note made by New Horizon to GHP. The deed of trust encumbers the Gilmer County real estate together with all existing and after acquired or after constructed structures, buildings, improvements, and fixtures.

On December 1, 2008, TFC filed a UCC-1 financing statement as a fixture filing in which TFC asserted a purchase money security interest with respect to one item of collateral, a modular home. The fixture filing lists Jones, the president of New Horizon, as the first debtor and New Horizon as an additional debtor. The Gilmer County Clerk indexed the fixture filing under the name of Jack Jones, but failed to also index the fixture filing under the name of New Horizon. New Horizon took delivery of the modular home on or after December 11, 2008 and placed it on the Gilmer County real estate.

On December 23, 2008, New Horizon granted a lien to Summit on the real estate to which the modular home has been affixed. The Summit deed of trust was recorded on January 30, 2009 by which New Horizon granted a security interest to Summit in the Gilmer County real estate together with all existing and future improvements,

structures, and fixtures.  Summit states that it had no notice of a UCC-1 financing statement filed on December 1, 2008 by TFC. Summit states that it learned during the pendency of this matter that, when indexing financing statements, the Gilmer County Clerk's Office only records the first debtor's name listed on the financing statement and the fixture filing was therefore only filed under Jones' name.

New Horizon defaulted under the terms of the credit document when it failed to remit the unpaid invoice cost of the modular home when it received permanent financing from Summit.  New Horizon has sold two additional units of the collateral without remitting the unpaid invoice costs of such units to TFC.  New Horizon also allegedly defaulted under the credit documents by failing to make a principal payment to TFC in an amount equal to the unpaid invoice costs for the units sold out of trust at the time New Horizon sold those units from its inventory.  TFC made a demand upon New Horizon for payment in full of the unpaid invoice cost of the unit. Another correspondence notified New Horizon that it remained in default of its obligations to TFC, that TFC was accelerating all obligations owing by New Horizon and that TFC demanded payment in full.

TFC seeks (1) a declaratory judgment seeking a determination that TFC's PMSI in the Encumbered Unit has priority over the security interests of GHP and Summit; (2) monetary judgments

against New Horizon for New Horizon's failure to pay TFC pursuant to the credit documents and failure to pay trust funds in relation to the Encumbered Unit and the Out of Trust Units; (3) a detinue claim against New Horizon; and (4) an award of TFC's attorney's fees and costs against New Horizon as a result of New Horizon's default.

## III.  <u>Applicable Law</u>

### A.  <u>Summary Judgment</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself

provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all

inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In this case, New Horizon and GHP, two of the non-moving parties, failed to respond to TFC's motion for summary judgment after sufficient time for discovery and sufficient time to respond. However, New Horizon and GHP's failure to file responses does not relieve TFC from the burden imposed upon it as the moving party. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410 (4th Cir. 1993). The United States Court of Appeals for the Fourth Circuit in Custer held that while "the failure to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

B.   Motion to Dismiss

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This

Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>,

591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed

factual allegations are not required, but the facts alleged must be

sufficient "to raise a right to relief about the speculative

level." Twombly, 550 U.S. at 555.

IV.  Discussion

A.  Motion for Summary Judgment

    1.  Priority in the Encumbered Unit

    In West Virginia,

> [a] perfected security interest in fixtures has priority
> over a conflicting interest of an encumbrancer or owner
> of the real property if: (1) [t]he debtor has an interest
> of record in the real property or is in possession of the
> real property and the security interest: (A) Is perfected
> by a fixture filing before the interest of the
> encumbrancer or owner is of record; and (B) Has priority
> over any conflicting interest of a predecessor in title
> of the encumbrancer or owner.

W. Va. Code § 46-9-334(e)(1). The general rule for priority in

fixtures is "the first to file or record prevails." W. Va. Code

§ 46-9-334 cmt. 6. An exception to the first to file rule exists

where a secured party obtains a purchase money security interest in

the goods. The West Virginia Code provides that, with the

exception of a construction mortgage:

> [A] perfected security interest in fixtures has priority
> over a conflicting interest of an encumbrancer or owner
> of the real property if the debtor has an interest of
> record in or is in possession of the real property and:
>
> (1)  The security interest is a purchase-money security
> interest;
>
> (2)  The interest of the encumbrancer or owner arises
> before the goods become fixtures; and

12

(3) The security interest is perfected by a fixture filing before the goods become fixtures or within twenty days thereafter.

W. Va. Code § 46-9-334(d).

In this case, GHP was the first party to file when it filed a deed of trust with the Gilmer County Clerk's office on August 8, 2008 which encumbered a piece of land owned by New Horizon, together with all existing and after-acquired or after-constructed buildings, structures, improvements, and fixtures on the real estate. It is undisputed that GHP does not have a "construction mortgage" on the Encumbered Unit. TFC filed its fixture filing on December 1, 2008, indicating a purchase money security interest in the Encumbered Unit. The interest of TFC arose before the goods became fixtures pursuant to the floor plan financing credit and security agreement. Finally, the security interest was perfected prior to the Encumbered Unit becoming a fixture as the fixture filing was filed on December 1, 2008 and the Encumbered Unit was shipped from the manufacturer to New Horizon on December 11, 2008. This Court finds that TFC's security interest has priority over GHP's security interest because TFC obtained a perfected purchase money security interest in the Encumbered Unit.

Summit, which filed a fixture filing on January 30, 2009, argues that this Court should find that its interest has priority over TFC's interest on "equitable grounds." Summit argues that TFC "invited error" by listing Jack Jones as the first debtor on the

fixture filing form.  The UCC-1 form provides the secured party two boxes to list debtors.  Summit does not and cannot provide any legal authority for its contention that TFC should have listed New Horizon as the first debtor.  It is not enough for Summit to argue that Jones, as a guarantor, is not primarily liable and should have been listed second.  Nothing in the UCC requires such action.

Summit further contends that TFC failed to ensure that the fixture filing had been properly filed.  Summit believes that TFC should have run a lien search to detect any filing errors.  The West Virginia Code does not impose such a heavy burden on a secured party.  In fact, the West Virginia Code provides that "[t]he failure of the filing office to index a record correctly does not affect the effectiveness of the filed record."  W. Va. Code § 46-9-517.  Furthermore, the comments to that statute provide that "this section imposes the risk of filing-office error on those who search the files rather than on those who file."  W. Va. Code § 46-9-517 cmt. 2.  This Court finds that TFC had no duty to ensure that Gilmer County properly filed the fixture filing.

Summit next states that TFC failed to attach with its pleadings the Guaranty Agreement in which Jones guaranteed New Horizon's obligations to TFC.  It argues that this is further evidence that Jones should not have been listed as the first debtor.  This Court does not agree.

Finally, Summit argues that "the general rule" in West Virginia is that a party may rely upon record titles in the office of the clerk of the county commission when the party does not have actual notice. In support of this contention, Summit relies on two West Virginia cases citing West Virginia Code § 40-1-9. Summit argues that "[f]inancing statements are analogous to mortgages and are used to provide notice of liens to potential creditors." Summit also states that it diligently ran a lien search and did not find TFC's lien. This Court cannot agree with Summit's argument. First, as mentioned above, Gilmer County's failure to properly file does not affect the effectiveness of the filing statement and the risk of filing office error falls on the searcher, not the secured party. Secondly, Summit cannot rely on West Virginia Code § 40-1-9. Prior to 1963, the statute read that it applied to deeds of trust or mortgages conveying "real estate, goods and chattels. John W. Fisher, II, <u>The Scope of Title Examination in West Virginia: Can Reasonable Minds Differ?</u>, 98 W. Va. L. Rev. 449, 474 n.101 (1996). "Goods and chattels were removed from this section in 1963 with the adoption of the U.C.C." <u>Id.</u> The statute now applies to deeds of trust or mortgages "conveying real estate." W. Va. Code § 40-1-9. Because section 46 of the West Virginia Code governs fixture filings, this Court cannot agree with Summit that because it "diligently ran a lien search," it is entitled to priority over TFC's security interest.

15

This Court finds that TFC's security interest has priority over both GHP and Summit's security interests. TFC is therefore entitled to a declaratory judgment that it is the priority lienholder of the Encumbered Unit.

2.  <u>Judgment Against New Horizon</u>

In both the 2005 Agreement and the 2007 Agreement, New Horizon promised to pay TFC the original invoice cost of each item of inventory financed or refinanced for New Horizon by TFC and any interest or other charges. 2005 Agreement ¶ 2; 2007 Agreement ¶ 4(a). The 2005 Agreement provides that a default occurs where "any sale or other disposition of the Collateral is made by Debtor other than in compliance with Paragraph 7 hereof." 2005 Agreement ¶ 9(c). When Debtor sells Collateral, the "Debtor holds all of the proceeds of any such sale in trust for, and promptly remits the unpaid Invoice Cost of such item of Collateral to, Secured Party." 2005 Agreement ¶ 7(c). The 2007 Agreement states that a default occurs where "any sale or other disposition of the Inventory is made by Debtor other than in compliance with Section 8 of this Agreement." 2007 Agreement ¶ 10(c). Where the Debtor sells any item of Inventory, "unless otherwise agreed to by Secured Party in writing in a particular case, Debtor holds all of the proceeds of any such sale in trust for, and immediately remits the unpaid Invoice Cost of such item of Inventory to, Secured Party." 2007 Agreement ¶ 8(c).

16

This Court finds that New Horizon is in default. New Horizon acknowledges that it operated in an out of trust situation with TFC. New Horizon's Resp. to Pl.'s First Set of Interrog. No. 2. After TFC learned of New Horizon's sales out of trust, TFC notified New Horizon that it should remit payment or face potential default and acceleration. TFC sent New Horizon a letter of default demanding payment of all debts owed to TFC in the amount of $270,166.77 when New Horizon failed to satisfy its obligation to pay the unpaid invoice cost for the units sold out of trust. New Horizon failed to satisfy its obligation to pay the unpaid invoice cost for the units sold out of trust pursuant to the terms of the Agreements and has not paid TFC any sum after the end of January 2010. Furthermore, New Horizon defaulted under the terms of the credit document when it failed to remit the unpaid invoice cost of the modular home when it received permanent financing from Summit.

The 2005 Agreement provides:

> If Debtor is in default hereunder, the indebtedness herein described and all other debts then owing by Debtor to Secured Party and/or its affiliates under this Agreement or any other present or future agreement shall, if Secured Party or any other affiliate shall so elect, become immediately due and payable.

2005 Agreement ¶ 9. The 2007 Agreement provides:

> If an Event of Default occurs, the indebtedness herein described and all other debts then owing by Debtor to Secured Party and/or its affiliates under this Agreement or any other present or future agreement (the "Obligations") shall, if Secured Party shall so elect, become immediately due and payable[.]

17

2007 Agreement ¶ 11.  Accordingly, TFC is entitled to reduce its

claim to judgment against New Horizon.  Out of Trust Unit A had an

invoice cost of $48,100.00.  Out of Trust Unit B had an invoice

cost of $112,362.00.  The outstanding balance on the Encumbered

Unit is $113,836.00.  TFC states that it is owed payment of all

debts of $270,166.77.  Because the 2005 Agreement and the 2007

Agreement allow for immediate payment of all debts in the event of

default, this Court awards TFC $270,166.77 plus pre-judgment and

post-judgment interest from the date of this judgment.[2]  Post-

judgment interest is paid in accordance with 28 U.S.C. § 1961,

which provides that "interest shall be calculated from the date of

the entry of the judgment, at a rate equal to the weekly average 1-

year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week

preceding the date of judgment."  Accordingly, post-judgment

interest shall be in the amount of 0.25%.  However, in diversity

cases, the pre-judgment interest rate is calculated pursuant to

state law.  <u>U.S. v. Dollar Rent A Car Systems, Inc.</u>, 712 F.2d 938,

---

[2]West Virginia Code § 56-6-31 is clear that the application of
post-judgment interest begins from the date of "every judgment or
decree for the payment of money."  While the judgment of this Court
is not a final judgment pursuant to Federal Rule of Civil Procedure
58, it is a judgment for the payment of money.  In interpreting a
similar statute, the Supreme Court of Virginia found that "the
rendition of that award in an order or decree shall fix the date
upon which post-judgment interest begins to accrue as to that
award, even if the order or decree rendering the award does not
conclude the cause . . ."  <u>Upper Occoquan Sewage Auth. v. Blake
Constr. Co., Inc./Poole & Kent</u>, 655 S.E.2d 10, 23 (Va. 2008).

940 (4th Cir. 1983). The plaintiff requested pre-judgment interest in its complaint, but has offered no calculation as to the amount of said pre-judgment interest. This Court defers entering judgment on the issue of pre-judgment interest in order that the parties may consider and then offer a written calculation as to the proper computation of pre-judgment interest.[3] Accordingly, the parties are directed to meet and confer and to prepare a computation of pre-judgment interest and file a report with this Court setting forth in detail the parties' recommendation, either separately or combined, regarding how pre-judgment interest in this matter should be calculated which filing shall be no later than **March 29, 2011**. Once this Court has determined the amount of pre-judgment interest, it will enter a memorandum opinion and order on the issue of pre-judgment interest.

This Court declines to find that $160,462.00[4] of the $270,166.77 awarded results from the breach of New Horizon's fiduciary duty to TFC and therefore constitutes a fraud upon TFC. Assuming without deciding that TFC and New Horizon did create a trust and that New Horizon was acting in a fiduciary capacity, TFC has failed to show in this proceeding how New Horizon's breach of

---

[3]Pre-judgment interest shall be computed pursuant to West Virginia Code § 56-6-31 and the interest rate shall be 7.00% as determined by the Administrative Order of the Supreme Court of Appeals of West Virginia entered January 3, 2011.

[4]This amount is the combined total of the invoice price of Out of Trust Unit A and invoice price of Out of Trust Unit B.

19

the trust constituted a fraud.  In a case involving similar facts where a debtor frequently sold goods "out of trust," the Fourth Circuit found that the debtor's conduct amounted to "defalcation" or "non-fraudulent default."  <u>In re Strack</u>, 524 F.3d 493, 497-98 (4th Cir. 2008).  TFC argues that New Horizon's breach of the trust constitutes a fraud upon TFC because a trust exists and a fiduciary relationship existed.  This is simply not enough under Fourth Circuit case law to prove fraud, even under a preponderance of the evidence standard.  See <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991) (holding that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard).  Based on the facts before this Court, as a matter of law, this Court cannot say at this time that New Horizon's breach of the trust constituted a fraud upon TFC.

In addition, TFC is also entitled to possession of the Encumbered Unit.  In the credit documents, New Horizon granted TFC the right to enter the property of New Horizon upon default and to repossess, take possession of and remove the Collateral.  The 2005 Agreement and the 2007 Agreement contain the same language, which states:

> Debtor agrees that Secured Party may, by itself or
> through an agent, without notice to any person and
> without judicial process of any kind, enter into any
> premises or upon any land owned, leased or otherwise
> under the apparent control of Debtor where Secured Party
> believes the Collateral may be and disassemble, render
> unusable and/or repossess all or any items of the

Collateral. Debtor expressly waives all rights to possession of the Collateral after default[.]

2005 Agreement ¶ 10; 2007 Agreement ¶ 11. Because this Court finds

that TFC's security interest has priority over the other security

interests in the Encumbered Unit, TFC is entitled to immediate

possession of the Encumbered Unit.

>    3.   <u>Attorney's Fees Against New Horizon</u>

Under the American rule of attorney's fees, "each party in a

civil action pays for its own attorney's fees absent a contract,

case law, or statute that provides to the contrary." <u>Haught v. The</u>

<u>Louis Berkman, LLC, W. Va.</u>, 417 F. Supp. 2d 777, 785 (N.D. W. Va.

2006); <u>see also</u> <u>Nelson v. W. Va. Public Employees Ins. Bd.</u>, 300

S.E.2d 86, 97 (W. Va. 1982) ("Attorneys' fees may also be awarded

by agreement of the parties."). Here, the parties included express

contractual language in the 2005 Agreement and the 2007 Agreement

authorizing the award of attorney's fees. The 2005 Agreement

states that "[d]ebtor agrees . . . to pay attorneys' fees and all

other expenses incurred by the Secured Party in enforcing its

rights after Debtor's default hereunder . . ." 2005 Agreement ¶ 6.

The 2007 Agreement states that:

>    [d]ebtor is also responsible to pay all other costs and
>    expenses incurred by Secured Party in connection with
>    this Agreement, including but not limited to attorneys'
>    fees and other legal expenses in connection with or
>    arising out of any deficiency suit, collection action or
>    otherwise following an Event of Default. All such costs
>    and expenses are payable on demand by Secured Party and
>    constitute part of the obligations of Debtor secured by
>    this Agreement.

2007 Agreement ¶ 11.  Pursuant to the language of the Agreements, TFC is entitled to an award of attorney's fees and costs. Accordingly, TFC is directed to file a bill of costs, which includes attorney's fees and expenses, with this Court by **March 29, 2011**.

B.   Motion to Dismiss

Third-party defendant Gilmer County filed a motion to dismiss Summit's third-party complaint.  In its motion, Gilmer County contends that the third-party complaint must be dismissed because it is immune from liability pursuant to West Virginia Code § 29-4(b)(1) and (c)(5).  This Court does not agree.

While West Virginia Code § 29-4(b)(1) does provide governmental immunity, the introductory clause to West Virginia Code § 29-4(b)(1) not cited by Gilmer County states, "Except as provided in subsection (c) of this section, a political subdivision is not liable in damages . . ."  West Virginia Code § 29-4(c)(2) states that, subject to West Virginia Code § 29-4(b)(5) and (6): "Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." Gilmer County does not allege that either of the limitations in West Virginia Code § 29-4(b)(5) and (6) applies.  This Court finds that Summit has alleged a plausible claim that it experienced a

loss resulting from Gilmer County's employees alleged negligence performed while acting in the scope of their employment.

Gilmer County also argues that it should be dismissed because of the public duty doctrine. The public duty doctrine is separate from the doctrine of governmental immunity. J.H. v. W. Va. Div. of Rehabilitation Servs., 680 S.E.2d 392, 403 (W. Va. 2009). The public duty doctrine "states that a governmental entity's liability for nondiscretionary governmental functions may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable." Wolfe v. City of Wheeling, 387 S.E.2d 307, 310 (W. Va. 1989). The "linchpin" of this doctrine "is that some governmental acts create duties owed to the public as a whole and not to the particular private person or private citizen who may be harmed by such acts." Parkulo v. W. Va. Bd. of Probation & Parole, 483 S.E.2d 507, 518 (W. Va. 1996). The public duty doctrine has a "special relationship" exception. J.H., 680 S.E.2d at 403. In order to establish the special relationship, four requirements must be met:

> (1) an assumption by the state governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the state governmental entity's agents that inaction could lead to harm; (3) some form of direct contract between the state governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking.

Syl. pt. 12, <u>Parkulo</u>, 483 S.E.2d 507.  The question of whether a special duty arises is a question of fact for the jury.  <u>J.H.</u>, 680 S.E.2d at 404.  Because the existence of a special duty is a question of fact for the jury, Gilmer County's motion to dismiss must be denied.

### V. <u>Conclusion</u>

For the reasons stated above, plaintiff Textron Financial Corporation's motion for summary judgment (Document Nos. 53 and 54) is hereby GRANTED AS FRAMED.  Accordingly, this Court declares that TFC is the priority lienholder of the Encumbered Unit, awards TFC $270,166.77 in damages as against New Horizon and post-judgment interest in the amount of 0.25% from the date of this judgment and pre-judgment interest in an amount to be determined after the parties submit a computation of pre-judgment interest, declines to find that $160,462.00 in damages constitutes a fraud upon TFC, finds that New Horizon shall immediately surrender possession of the Encumbered Unit to TFC, and awards attorney's fees to TFC in an amount to be determined after TFC submits a bill of costs on or before March 29, 2011.  In addition, third-party defendant The Office of the Clerk of Gilmer County, West Virginia's motion to dismiss (Document No. 46) is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     March 15, 2011

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE